IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID BUCKLEY FENNEN,

    Petitioner,                    No. CIV S-05-1776 GEB GGH P

    vs.

AGENT NAKAYEMA, et al.,

    Respondents.                FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a former state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2003 petitioner was convicted of possession of methamphetamine for sale, plus enhancements for a prior drug conviction and a prior prison term. Petitioner was sentenced to state prison for seven years.

        In this action petitioner raises one claim: the trial court erred in imposing the upper term by finding aggravating factors to be true without a jury trial. After carefully considering the record, the court recommends that the petition be denied.

Anti-Terrorism and Effective Death Penalty Act

        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The

AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

/////

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Petitioner timely appealed to the California Court of Appeal. After briefing, the Court of Appeal affirmed the judgment. Respondent's Lodged Document, no. 4. Petitioner filed a petition for rehearing raising the claim raised in the instant petition. Id., no. 5. In a reasoned opinion, the Court of Appeal again affirmed the judgment. Id., no. 8. The California Supreme Court denied the petition for review in an unexplained opinion. Id., no. 9. Accordingly, this court considers whether the opinion of the California Court of Appeal denying petitioner's petition for rehearing was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

/////

<u>Discussion</u>

A summary of the offense is contained in the opinion of the California Court of Appeal denying petitioner's petition for rehearing. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> On November 5, 2002, the Sacramento County Sheriff's Department executed a search warrant at 9960 Old Placerville Road, a residence that defendant shared with codefendant Kevin Yokoi. The officers seized 437.43 grams of methamphetamine in the search.
>
> When the officers entered the house, they saw defendant walking out of a bedroom that was set up as an office. He had $734 in cash in his wallet and two baggies containing 3.91 grams of methamphetamine in his pocket.
>
> A search of the office revealed bills, insurance papers, a checkbook, and other correspondence with defendant's name and the Old Placerville Road address. On the desk, officers found a digital scale, a ceramic plate with a small amount of white powder on top, a razor blade, a glass pipe, and two $100 bills. Inside the desk were several baggies containing different amounts of methamphetamine, empty Ziploc baggies of various sizes, a device for inhaling methamphetamine, and a small metal spoon. In the closet of a room identified as defendant's bedroom, officers found a lock box containing more baggies of methamphetamine, a metal scoop, a couple of glass pipes and additional packing materials. The officers also searched a storage unit rented by defendant and found hundreds of baggies similar to those found at defendant's residence.
>
> The search of Yokoi's bedroom revealed a baggie containing 437 grams of sucrose, a suspected "cutting" agent. Also found were baggies containing a powdery residue suspected to be methamphetamine, smoking pipes, a balance scale, and numerous empty plastic baggies of various sizes.
>
> The telephone rang while the officers were conducting the search. The caller asked for "David." The officer who answered told the caller that David was busy and asked if he could help. The caller said he wanted an "eight-ball," slang for 3.5 grams of methamphetamine. The officer told the caller to come over. A man who identified himself as "Mike" arrived approximately 30 minutes later. He was carrying a car stereo and said he had come to work on a car with David. The officers arrested Mike when they found 5.6 grams of methamphetamine in his possession.
>
> Based on the amount of methamphetamine found, the amount of cash in defendant's possession and the numerous empty baggies of different sizes, the prosecution's expert opined that the methamphetamine was possessed for the purpose of sale. The expert testified that the street value of the approximately 430 grams of methamphetamine collected from defendant's office, bedroom and pocket was up to $43,000 uncut and up to $83,000 cut and sold by the gram.

Respondent's May 31, 2006, lodged document no. 8, pp. 2-4.

1    The trial court sentenced petitioner to the upper term of three years for his
2 conviction for possession of methamphetamine for sale. In choosing the upper term, the trial
3 court stated, "I do feel...that [defendant] was the most culpable of the parties. It is a shame
4 someone with his intelligence and background would engage in criminality such as this. This did
5 show a great deal of sophistication and it did show he was a leader in the endeavor."
6 Respondent's lodge doc. # 8, p. 6. The court also cited the large amount of methamphetamine
7 involved in the crime and that petitioner's crimes were of increasing seriousness. Id., pp. 6-7.
8 The court acknowledged factors in mitigation but concluded,

> This case does auger [sic] for the higher term by reason of the totality of the circumstances here. [¶] There was continued involvement in drug sales and his past experience having two prior felony convictions. With his level of intelligence, I don't believe he was a user. I believe he was a businessman in this endeavor and he utilized Mr. Yokoi as part of that business endeavor and Mr. Yokoi's dependency on drugs.

Id., pp. 6-7.

The court will set forth the California law regarding the imposition of upper terms as summarized by the California Court of Appeal:

> Penal Code section 1170, subdivision (b), reads in part: "(b) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime...In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to section 1203.03 and statements in aggravation or mitigation...The court shall set forth on the record the facts and reasons for imposing the upper or lower term..."
>
> California Rules of Court, rule 4.420(a) provides: "(a) When a sentence of imprisonment is imposed, or the execution of a sentence of imprisonment is ordered suspended, the sentencing judge shall select the upper, middle, or lower term on each count for which the defendant had been convicted, as provided in section 1170(b) and these rules. The middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation."
>
> Section of the appropriate term is a matter within the broad discretion of the trial court. It may balance the aggravating and mitigation factors against each other in qualitative as well as quantitative terms. (People v. Avalos (1996) 47 Cal.App.4th

5

1569, 1582.)  A single factor in aggravation will support imposition of the upper term.  (People v. Osband (1996) 13 Cal.App.4th 622, 730 (Osband); People v. Castellano (1983) 140 Cal.App.3d 608, 615.)

Id., pp. 4-5.

Petitioner argues that the trial court erred in imposing the upper term by finding aggravating factors to be true without a jury trial.  In Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  In Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), the Supreme Court explained that "the statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  542 U.S. at 303, 124 S. Ct. at 2537.

In Cunningham v. California, 127 S. Ct. 856 (Jan. 22, 2007) the Supreme Court, citing Apprendi and Blakely, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury.

At the time petitioner raised his claim in state court, Cunningham had not been decided.  Therefore, petitioner cited Apprendi and Blakely in support of his claim.  Because petitioner had not raised this claim in the trial court, the California Court of Appeal, citing Cotton, supra, decided not to notice the forfeited error because the factor relied on by the trial court to enhance his sentence was uncontroverted and supported by overwhelming evidence:

> Applying the Sixth Amendment to the United States Constitution, the United States Supreme Court held in Apprendi that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt.  (530 U.S. at p. 490).  For this purpose, the statutory maximum is the maximum sentence that a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant.  Thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional factual findings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts.  (Supra, 542 U.S. at pp. ___, [159 L.Ed.2d at pp. 413-414].)

> Relying on Apprendi and Blakely, defendant claims the trial court erred in imposing the upper term on count one because the court relied upon facts not submitted to the jury and proved beyond a reasonable doubt, thus depriving him of the constitutional right to a jury trial on facts legally essential to the sentence. The contention fails because defendant did not raise the issue in the trial court. (See United States v. Cotton (2002) 535 U.S. 625 [152 L.Ed.2d 860] (Cotton).)
>
> In Cotton, a case decided after its decision in Apprendi, the Supreme Court unanimously held that a defendant's failure to object to Apprendi error in the trial court forfeits the right to raise it on appeal if the error did not seriously affect the fairness, integrity, and public reputation of the judicial proceedings, i.e., if a factor relied upon by the trial court in violation of Apprendi was uncontroverted at trial and supported by overwhelming evidence. (Cotton, supra, 535 U.S. at pp. 631, 633).
>
> Such is the case here. Overwhelming evidence presented at trial established that the officers seized 437.43 grams of methamphetamine in their search of defendant's residence, defendant acknowledged at sentencing that there was a large amount of methamphetamine, and he did not raise an Apprendi objection when the trial court used that fact to impose the upper term.
>
> Defendant maintains that the trial court could not rely on the aggravating factor that he admitted without first obtaining an informed waiver of his right to jury trial on that issue. However, the record demonstrates that the amount of methamphetamine was uncontested at trial. Defendant's statement–"[t]he large quantity of meth, I agree with that"–was more in the nature of a factual stipulation than an admission. Thus, no admonition waiver was required.
>
> Because the fact relied on by the trial court was uncontroverted at trial and supported by overwhelming evidence, any error under Apprendi and Blakely did not seriously affect the fairness, integrity and public reputation of the judicial proceedings. We therefore conclude defendant forfeited his right to raise the error on appeal. (Cotton, supra, 535 U.S. at pp. 631, 633; see Osband, supra, 13 Cal.4th at p. 730 [one valid factor is sufficient to expose defendant to the upper term].)]

Respondent's lodged document no. 8, pp. 8-10.

It is important to the outcome of this case to recognize that the appellate court imposed a procedural bar, and did not utilize the harmless error standard as it would if the claim had been properly raised in the trial court. "We therefore conclude defendant forfeited his right to raise the issue on appeal." See Opinion, supra. The "plain error standard" utilized by a state court to avoid the imposition of a state law procedural bar, or forfeited objection, (even if adopted from federal standards on direct review) is not the standard of review for the review of the substance of constitutional errors which occur in state court. Apprendi errors are reviewed in

7

California courts on a harmless error beyond a reasonable doubt standard. People v. McGee, 38 Cal. 4th 682, 700, 42 Cal. Rptr. 3d 899, 912 (2006) citing People v Epps, 25 Cal. 4th 19, 21, 104 Cal. Rptr. 2d 573 (2001). This is the same standard of harmlessness employed in federal court. "In light of the Supreme Court's ruling in *Washington v. Recuenco*, __U.S.__, 126 S.Ct. 2546 (2006), we hold that *Apprendi* errors are reviewed for harmlessness using the framework of *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L. Ed. 2d 35 (1999)." United States v. Zepeda-Martinez, 470 F.3d 909, 913 (9th Cir. 2006). Under that standard, "an error is harmless if the court finds beyond a reasonable doubt that the result would have been the same absent the error.'" Id.

However, the issue here, again, is whether the appellate court pronounced a procedural bar which will be honored here. In that light, the procedural bar must be well established and regularly followed. See Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003). However, respondent must at least raise the procedural bar. Id, at 584. Respondent did not do this as it mistook the holding of the appellate court as a holding on the merits of the Apprendi issue. The independent state ground, assuming that it was one despite adoption of federal plain error standards, does not control the standard of review of the alleged Apprendi error.

Therefore, the undersigned turns to the merits. First, the undersigned does not believe that Cunningham would be retroactively applied. Although petitioner belatedly raised an Apprendi error, that is not the same thing as saying that Cunningham was dictated by that precedent. Apprendi itself is not imposed retroactively to otherwise final convictions. United States v. Sanchez-Cervantes, 282 F.3d 664, 666-67 (9th Cir. 2002). Indeed, Blakely, one of the earlier progeny of Apprendi has been held not to be retroactive on collateral review. Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005). If that is the case, there is no more reason to find that Cunningam, even further removed from Apprendi would be retroactively applied to cases which have already become final on account of Apprendi's issuance.

\\\\\

However, petitioner might argue that <u>Blakely</u> was decided before his conviction was final, indeed it was cited within his appellate opinion, and that <u>Cunningham</u> is so closely related to <u>Blakely</u> that <u>Cunningham</u> should be applied to those cases which were not final prior to <u>Blakely's</u> issuance.  While petitioner's argument is much closer here, the California Supreme Court and three justices of the United States Supreme Court did not believe <u>Blakely</u> applied.  The <u>Cunningham</u> dissenters believed that California's determinate sentencing system was more akin to the discretionary Guidelines system ultimately upheld in <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005),  than it was to <u>Blakely</u>.  In light of this array of authority on the opposite side of the <u>Cunningham</u> court, it cannot be said that the result in <u>Cunningham</u> was dictated by <u>Blakely</u>.  Although <u>Blakely</u> was a central underpinning for the majority view in <u>Cunningham</u>, "dictated by precedent" requires something more than that the prior precedent was applied.  If "reasonable jurists" could have determined that California's sentencing system was more like that of <u>Booker</u> which upheld the federal sentencing system insofar as judges had discretion to find facts within the statutory maximum, then the <u>Cunningham</u> rule was not dictated by precedent. See <u>Whorton v. Bockting</u>, 127 S. Ct. 1173, 1181 (2007); <u>Shults v. Whitley</u>, 982 F.2d 361, 362 (9th Cir. 1992).  The court finds that reasonable jurists could and did so.

Even if <u>Cunningham</u> were to be retroactively applied, and the <u>Neder</u> "same result beyond a reasonable doubt" standard were to be applied, the undersigned would find that petitioner could not prevail.  As stated above, only one aggravating factor need be found to enhance California's mid-term to the upper term.  In this case the trial judge found, among other things, that quite a bit of methamphetamine warranted the higher term.  In this case, the undersigned finds beyond a reasonable doubt that the same result would have obtained had a jury been asked to find this fact.  The amounts of methamphetamine, over 400 grams, went undisputed at trial.  This amount, under federal standards, could warrant a 10 years to life sentence, <u>see</u> 21 U.S.C. § 841(b) – clearly the amount of methamphetamine was significant.
\\\\

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 3/27/07

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

fenn1776.157